1
2
3
4
5
6
7
8
# UNITED STATES DISTRICT COURT
9
## SOUTHERN DISTRICT OF CALIFORNIA
10

11   ENEDINO DURAN GOMEZ, et al.,                    Case No. 08cv1442 BTM (CAB)

12                                    Plaintiffs,    **ORDER GRANTING IN PART AND**
          v.                                         **DENYING IN PART MOTION FOR**
13                                                   **CLASS CERTIFICATION**
      ROSSI CONCRETE, INC., et al.,
14
                                    Defendants.
15

16          Plaintiffs Reynaldo Galvan, Juan Martinez, Andres Millan, and Zacarias Millan

17   ("Moving Plaintiffs") have filed a motion for class certification [Doc. 35].  For the following

18   reasons, the motion is **GRANTED in part** and **DENIED in part.**

19

20                                   **I.  BACKGROUND**

21          This is a putative class-action suit by construction workers against their employer,

22   Defendant Rossi Concrete, Inc.[1]  Rossi Concrete is a concrete contractor that works mainly

23   in Southern California.  Plaintiffs allege a variety of employment-related claims against

24   Defendants under both federal and state law.

25          Plaintiffs define the class as "[a]ll current and former employees of Employer, who

26   have performed construction work on public works for Employer within four years of the filing

27   _____

28          [1]  Plaintiffs have also named Joseph Rossi, Rossi Concrete's owner, and the Rossi
      Concrete, Inc. Defined Benefit Pension Plan as defendants.

of this Complaint."[2]  They also want to certify several subclasses related to their causes of action.  But they do not want to certify subclasses for all causes of action; they will pursue some claims individually.  The Court therefore only discusses those claims for which Plaintiffs seek class certification.

## 1.    ERISA Fiduciary-Duty Claims

Plaintiffs' first three causes of action are similar claims for ERISA fiduciary-duty violations.[3]  Each cause of action relates to one of three ERISA benefit plans: Plan 1, Plan 2, and Plan 3.[4]  Plaintiffs claim that Rossi Concrete and Mr. Rossi did not make enough contributions to all three plans, misstated the amount of contributions owed, and kept plan assets for themselves.  And with respect to Plans 1 and 2 only, Plaintiffs allege Rossi Concrete and Mr. Rossi were imprudent and risked losses to the plans because they hired Benefit Synergy, an allegedly non-existent entity, as the plans' administrator.

Plaintiffs propose three subclasses, one related to each of the three plans.  The Plan 1 Subclass comprises "participants, or former participants within the last four years, of the employee benefit plan defined as Plan 1 in the Complaint."  The Plan 2 Subclass and Plan 3 Subclass have identical definitions, except they relate to Plans 2 and 3 as defined in the Complaint.[5]

## 2.    ERISA Termination

---

[2]  Four years from the filing of the Complaint is the "relevant time period" as that term is used throughout this order.

[3]  Plaintiffs sue under 29 U.S.C. §§ 1109, 1132(a)(2).

[4]  The first cause of action relates to Plan 1, the second to Plan 2, and the third to Plan 3.  Plan 1 is a defined-benefit pension plan under 29 U.S.C. § 1002(35), which has Mr. Rossi as trustee and an entity named Benefit Synergy as the administrator.  Plan 2 is an individual-account pension plan under 29 U.S.C. § 1002(34), which also has Benefit Synergy as the administrator.  And Plan 3 is an individual-account pension plan under 29 U.S.C. § 1002(34), which has Trustees of the AGC San Diego Chapter as administrator.

[5]  The Plan 1 Subclass is applicable only to the first cause of action in the Complaint.  Similarly, the Plan 2 Subclass relates only to the second cause of action, and the Plan 3 Subclass relates only to the third.

08cv1442 BTM (CAB)

1    Plaintiffs' fifth cause of action relates only to Plan 1 and alleges that Rossi Concrete
2   and Mr. Rossi failed to properly notify plan participants of their intent to terminate the plan.
3   Plaintiffs claim Rossi Concrete and Mr. Rossi attempted to terminate Plan 1 as of August 15,
4   2007.  Although participants and beneficiaries must get notice of the intent to terminate at
5   least sixty days before the proposed termination date, 29 U.S.C. § 1341(a)(2), certain
6   Plaintiffs allegedly did not get notice until about October 3, 2007.  And the notice was in
7   English, which Plaintiffs claim is not the first language of most of the Plan 1 Subclass.  Their
8   first language is mostly Spanish, according to Plaintiffs.  So not only did Defendants
9   allegedly fail to give notice in time, the notice was not "written in such manner as is likely to
10  be understood by the participant or beneficiary." 29 U.S.C. § 1341.

11   Plaintiffs propose creating a Plan 1 Termination Subclass comprising "participants,
12  or former participants within the last four years, of the employee benefit plan defined as Plan
13  1 in the Complaint who failed to receive timely notice of the termination of Plan 1 or notice
14  in a language they understood."

15

16  **3.    Prevailing Wages**

17   In their seventh cause of action, Plaintiffs claim that Rossi Concrete paid them less
18  than the minimum prevailing wage required for public-works jobs under California law.  A
19  contractor on a public-works project must pay a prevailing per diem wage, which is set by
20  the Department of Industrial Relations.  *See* Cal. Lab. Code §§ 1770–71.  In satisfying the
21  prevailing wage, employers can either pay all cash wages or pay a combination of cash
22  wages and benefits, like contributions to pension funds, healthcare, vacation, travel, and
23  other fringe benefits.  *See id.* at § 1773.1; *WSB Elec., Inc. v. Curry*, 88 F.3d 788, 791 (9th
24  Cir. 1996).  But even though employers can use their contributions to benefit plans to help
25  meet the prevailing wage, Plaintiffs claim there is still a minimum cash wage that employers
26  must pay.  Plaintiffs call this minimum cash wage the base rate.  *See* Cal. Lab. Code §
27  1773.1(c); *WSB Elec.*, 88 F.3d at 791.

28   Plaintiffs' prevailing-wage claim has two parts.  The first is that Plaintiffs allege Rossi

Concrete failed to pay the correct base rate to its employees. And second, they allege Rossi Concrete took more credit than it should have for its employer contributions to benefit plans.

Plaintiffs seek to certify the base-rate and employer-contribution issues as class-wide issues relevant to two claims: the seventh cause of action for failure to pay the prevailing wage and the third cause of action for failure to contribute enough money to Plan 3.

### 4. Hours and Overtime

As part of their seventh cause of action, Plaintiffs also seek damages for failure to pay overtime wages. Although they plan to assert some of these claims individually, they want to certify a subclass of drivers who were allegedly required to drive company vehicles and had to report to Rossi Concrete's yard before going to the job site. According to Plaintiffs, these drivers should have been paid the prevailing wage for this travel time, but instead were paid only the minimum wage.

Plaintiffs propose a Driver Subclass, comprising "class members who were required to drive vehicles to and from jobsites as part of their employment with the Employer [Rossi Concrete]." The class issue related to the Driver Subclass is whether Rossi Concrete should have paid the prevailing wage, instead of the minimum wage, for required travel time.

### 5. Failure to Pay Wages Upon Termination

Plaintiffs' tenth cause of action seeks damages for Rossi Concrete's alleged failure to pay unpaid wages. Unpaid wages are due immediately if an employee is fired or gives a notice of resignation, Cal. Lab. Code §§ 201(a), 202(a), or within seventy-two hours in the case of resignation without notice, *id.* at § 202(a). If the employer willfully fails to pay the unpaid wages, an employee can get statutory damages. *Id.* at § 203(a).

Plaintiffs allege that Rossi Concrete willfully failed to pay unpaid wages upon termination. And they want to certify a Terminated Subclass comprising "those former employees in the Class who were terminated or left employment before the filing of this lawsuit."

**6.      Unfair Competition Law ("UCL") Claim**

As their eleventh cause of action, Plaintiffs make a claim under California's UCL, Business & Professions Code § 17200.  California's UCL "borrows violations of other laws and treats" them as unlawful business practices "independently actionable under section 17200."  *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (quotation omitted).  "Violation of almost any federal, state, or local law may serve as the basis for a[n] [unfair competition] claim."  *Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008) (citing *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838–39 (1994)).  The UCL permits a plaintiff to get injunctive relief, but generally does not allow damages.  *See* Cal. Bus. & Prof. Code § 17203; *Theme Promotions, Inc. v. New America Mktg. FSI*, 546 F.3d 991, 1008–09 (9th Cir. 2008).

Here, Plaintiffs base their UCL claim on their seventh cause of action, which alleges Rossi Concrete failed to pay prevailing and overtime wages, gaining an unfair advantage over its employees and competitors.  This claim has the same factual issues as the seventh cause of action, and only adds a legal issue: whether those same facts would also be a violation of the UCL.  And like the seventh cause of action, Plaintiffs seek certification of the UCL claim as a class-wide issue.

## II.  LEGAL STANDARD

On a motion for class certification, a court must generally take the substantive allegations of the complaint as true.  *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litigation*, 691 F.2d 1335, 1342 (9th Cir. 1982).  Rather than deciding whether the claims have any merit, the inquiry instead focuses on the "nature and range of proof necessary to establish those allegations."  *Id.*  But if the merits of the claims overlap with consideration of the Rule 23 factors, a court may look beyond the pleadings to ensure Rule 23's requirements are met.  *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir. 2010).  Thus, a court is not bound to accept a plaintiff's allegations as true if they relate to class certification issues.  *Id.*

### III. DISCUSSION

**1.    Supplemental Jurisdiction**

Before turning to the requirements of Rule 23, the Court addresses Defendants' argument that the Court should not exercise supplemental jurisdiction over Plaintiffs' state-law claims.[6]  Courts may exercise supplemental jurisdiction over state-law claims that form part of the same case or controversy as the federal claims.  *See* 28 U.S.C. § 1367(a).  Even if a state claim forms part of the same case or controversy, a court may decline to hear the claim if it "substantially predominates over the claim or claims over which the district court has original jurisdiction."  *Id.* at § 1367(c)(2).  Supplemental "jurisdiction is a doctrine of discretion," *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997), and several factors influence whether a court should exercise supplemental jurisdiction: "economy, convenience, fairness and comity."  *Acri v. Varian Assocs., Inc.* 114 F.3d 999, 1001 (9th Cir. 1997).

Defendants argue that the state-law claims predominate over the federal ones and the Court should decline to exercise jurisdiction over them.  But Plaintiffs' ERISA claims, which allege Defendants failed to contribute enough to the ERISA plans, are interwoven with Plaintiffs' prevailing-wage state-law claim.  And if Plaintiffs prove that Defendants took too much credit for their employer contributions, or if they otherwise failed to pay the correct prevailing wage, then they might be liable to pay additional amounts to the ERISA plan.  So resolving the prevailing-wage issue is necessary to resolving the federal ERISA claims.  As Plaintiffs correctly point out, if the Court split these causes of action, the Court would risk inconsistent rulings on the same issue—namely, whether Defendants correctly paid the prevailing wage.  "Judicial economy weighs against bifurcated state and federal proceedings in these circumstances."  *Bamonte v. City of Mesa*, No. 06cv1860, 2007 WL 2022011,  (D. Ariz. July 10, 2007) (exercising supplemental jurisdiction over state-law overtime claims).

Defendants have another argument against exercising supplemental jurisdiction.

---

[6]  Although Defendants should probably make their jurisdictional arguments in a separate motion to dismiss, the Court addresses this argument here for the sake of judicial efficiency.

They argue that certifying a Rule 23(b)(3) class action on Plaintiffs' state-law wage claims would contradict the policy and procedures in the Fair Labor Standards Act ("FLSA"). Plaintiffs assert a federal claim for unpaid overtime wages under the FLSA.[7]  FLSA claims can be asserted as collective actions, but the FLSA uses an opt-in procedure, which means a potential plaintiff only enters an FLSA case if he affirmatively chooses to opt in.  29 U.S.C. § 216(b).[8]  But Plaintiffs also assert similar state-law overtime wages claim for which they seek Rule 23 class certification.  And Rule 23(b)(3)[9] uses an opt-out procedure, which means that plaintiffs are automatically part of the class unless they opt out.  So there are two different types of procedures for collective action on Plaintiffs' overtime claims: the opt-in procedure under the FLSA and the opt-out procedure under Rule 23.  There is a tension between these procedures, especially when they are used in the same case.

This tension has not gone unnoticed by other courts.  *See, e.g., Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008) ("There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § [216(b)]."); *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975) (same).  And there is conflicting authority about whether an FLSA action can be combined with a Rule 23 action for similar state-law claims.  Unfortunately, "[n]o authority from the Ninth Circuit is directly on point."  *Bamonte*, 2007 WL 2022011, at *4.  Some district courts have denied certification of state-law overtime claims because of this tension, or because using opt-in and opt-out procedures in the same case could confuse the class.  *E.g., Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 70 (E.D. Pa. 2009) (listing cases); *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D.

---

[7]  The Court did not describe the FLSA claim in the preceding section because Plaintiffs do not seek certification for that claim.  Plaintiffs assert the FLSA claim as the sixth cause of action in the Complaint.

[8]  That provision provides in part that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).

[9]  Rule 23(b)(1) and (b)(2) class actions do not have an opt-out procedure.  *See* Fed. R. Civ. P. 23(c)(2)(A).  In those types of class actions, every member of the class is bound by the judgment and they cannot opt out. *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994).  Only Rule 23(b)(3) has an opt-out procedure.  *Id.*

1   574, 577 (N.D. Ill. 2004) (The plaintiff "cannot circumvent the opt-in requirement and bring

2   unnamed parties into federal court by calling upon state statutes similar in substance to the

3   FLSA that lack the opt-in requirement."). This is mainly because plaintiffs could enter federal

4   court on an FLSA claim, but make an end run around the FLSA's opt-in requirement by

5   seeking Rule 23(b)(3) certification on identical state-law overtime claims.

6        Still, other courts have exercised supplemental jurisdiction over the state overtime

7   claims, and "downplay the issue of congressional intent [in the FLSA] and emphasize that

8   factors such as judicial economy and efficiency strongly favor the exercise of jurisdiction over

9   Rule 23 class actions that involve identical facts and highly similar legal theories." *Bamonte*,

10   2007 WL 2022011, at *4 (listing cases).  The Court agrees that consolidating the state

11   claims with the federal claims would be much more efficient.  Rather than litigating the same

12   overtime issues in both state and federal court, it would save judicial and litigant resources

13   to litigate them all here.

14        Moreover, this case is different from most of the others that declined to exercise

15   supplemental jurisdiction.  In those cases, the only claims in the case were overtime claims

16   under the FLSA and state law.  *See, e.g., Pereira*, 261 F.R.D. at 61.  But here, Plaintiffs

17   assert several ERISA claims, and, according to Plaintiffs, the ERISA claims are the biggest

18   ones in this case in terms of potential recovery and litigation resources.[10]  In contrast, the

19   state-law overtime claims are relatively minimal and relate only to the Driver Subclass.

20        This does not appear to be a case where Plaintiffs are using the FLSA merely as a

21   jurisdictional hook to assert state-law overtime claims in federal court.  Plaintiffs have alleged

22   significant ERISA violations in addition to their overtime claims, which supplies another basis

23   for federal jurisdiction.  And although the contradictory opt-in and opt-out procedures might

24   be somewhat confusing to class members in some cases, it will not have that effect here

25

26   ───────────────────
        [10]  Defendants argue in their sur-reply that the only grounds for federal jurisdiction are
     the ERISA claims.  (Sur-reply 2.)  But Plaintiffs have properly pled FLSA claims, which are
27   also a basis for federal jurisdiction.  They also argue that Plaintiffs' ERISA cause of action
     fails to state a claim, but these arguments are better suited for a motion to dismiss or a
     motion for judgment on the pleadings.  The parties have not briefed the propriety of Plaintiffs'
28   ERISA claims, and on a motion for class certification the Court is bound to consider
     Plaintiffs' substantive allegations as true.

because Plaintiffs are not seeking to certify the FLSA claim as a class action.  The Court therefore exercises supplemental jurisdiction over the state claims.

**2.     Rule 23(a)**

A plaintiff seeking class certification bears the burden of establishing that each of the four requirements of Federal Rule of Civil Procedure 23(a), and at least one requirement of Rule 23(b), have been met.  *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 598–99 (9th Cir. 2010).  These requirements must be satisfied with respect to each class and subclass.  Fed. R. Civ. P. 23(c)(5); *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).  The Court first addresses whether Plaintiffs' proposed class and subclasses have satisfied the elements of 23(a).

The requirements of Rule 23(a) are that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  These requirements are known as numerosity, commonality, typicality, and adequacy.

A.     Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The numerosity requirement "requires examination of the specific facts of each case and imposes no absolute thresholds."  *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980) (citing cases).  Although a plaintiff is not required to denote a precise number of class members, "[t]he central question is whether Plaintiffs have sufficiently identified and demonstrated the existence of the numbers of persons for whom they speak."  *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 680-681 (S.D. Cal. 1999).  In general, courts find numerosity when the class includes at least forty members.  *Rannis v. Recchia*, No. 09-55859, 2010 WL 2124096, at *4 (9th Cir. May

27, 2010); *Dilts v. Penske Logistics, LLC*, __ F.R.D. __, 2010 WL 1709807, at *4 (S.D. Cal. April 26, 2010) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 482 (2d Cir. 1995)).  And classes of fifteen or less are too small.  *Gen. Tel. Co.*, 446 U.S. at 339.  Each class and subclass must meet the numerosity requirement.  *See* Fed. R. Civ. P. 23(c)(5); *Traylor v. Avnet, Inc.*, 257 F.R.D. 521, 527 (D. Ariz. 2009) (citing *Betts v. Reliable Collection Agency*, 659 F.2d 1000, 1005 (9th Cir. 1981)) ("When a class is divided into subclasses, each subclass must independently meet Rule 23 certification requirements.").

   i.   Main Class

Plaintiffs claim that the main class comprises about four-hundred members.  If this is true, the class would easily meet the numerosity requirement.  But Rossi Concrete argues that Plaintiffs' evidence does not establish that the class has that many members.

Plaintiffs originally cited only one piece of evidence to support its claim: Rossi Concrete's interrogatory response.  Plaintiffs had asked how many "field employees" Rossi Concrete employed during the relevant time period.  (Cvitan Decl., Ex. E at 163.)  And Rossi Concrete answered, "Approximately 400 field employees."  But the main class is defined as those employees who "performed construction work on public works for Employer,"[11] and it is possible that only a subset of the four-hundred field employees actually worked on public-works projects.  Some may have worked only on private construction jobs, which Plaintiffs admit is a part of Rossi Concrete's work.  (Pls.' Mem. 1:16–19.)

In their reply, Plaintiffs produce additional evidence that would show numerosity for the main class.[12]  They show that Plan 3 has 238 participants.  (Cvitan Decl., Ex. C at 45.) All the participants in Plan 3 are, or were, prevailing-wage employees, (Cvitan Decl., Ex. D at 86; Suppl. Bautista Decl., Ex. I; Suppl. Cvitan Decl., Ex. A, 117:1–15), and prevailing-wage employees are construction workers on public-works projects.  *See* Cal. Lab. Code §

---

[11]  Field employees are presumably those employees who perform construction work.

[12]  The Court granted Defendants leave to file a sur-reply, which they did.  Defendants had an opportunity to respond to the new evidence and arguments raised in Plaintiffs' reply.

08cv1442 BTM (CAB)

1  1771 (prevailing-wage must be paid to "workers employed on public works"); Lab. Code §

2  1723 (worker defined as "laborer, worker, or mechanic").  So all 238 participants in Plan 3

3  were construction workers who worked on public works projects and were entitled to the

4  prevailing wage.

5       Rossi Concrete therefore employed at least 238 construction workers who worked on

6  public-works projects, and numerosity would be satisfied for the main class.

7

8

9         ii.    <u>Subclasses</u>

10       Before addressing numerosity in the subclasses, the Court first addresses the precise

11  definition of each subclass.  All the subclasses, by definition, are subsets of the main class.

12  *See* Fed. R. Civ. P. 23(c)(5) ("Subclasses.  When appropriate, a class may be *divided* into

13  subclasses that are each treated as a class under this rule.") (emphasis added).  And  the

14  main class only contains Rossi Concrete's field employees who worked on public-works

15  projects.  So each subclass also only contains field employees who worked on public-works

16  projects. For example, the Plan 1 Subclass, which Plaintiffs define as all participants in Plan

17  1 during the relevant time period, does not really include *all* the Plan 1 participants.  It only

18  includes those participants who were also field employees and who worked on public-works

19  projects. If the Court does not interpret each subclass as containing the additional limitations

20  of the main class, there would be an absurd result: Defendant Joe Rossi, who is a member

21  of Plan 1 (but not a field employee who worked on public works), would be a member of the

22  Plan 1 Subclass, and would be both a plaintiff and defendant in this lawsuit.  With this in

23  mind, the Court analyzes whether each subclass meets the numerosity requirement.

24       The Plan 3 Subclass, which comprises all Plan 3 participants, has 238 members.  As

25  discussed above, all the Plan 3 participants are or were prevailing-wage employees and

26  members of the main class.   The Plan 3 Subclass therefore satisfies the numerosity

27  requirements.  But the Plan 1 and Plan 2 Subclasses, as well as the Plan 1 Termination

28  Subclass, may not.

Plaintiffs define the Plan 1 and Plan 2 Subclasses to comprise all participants in each of those benefit plans.  There are 110 participants in Plan 1, and 32 participants in Plan 2.  Although the total number of participants in these plans may be sufficiently numerous, Plaintiffs do not cite any evidence showing how many participants in Plans 1 and 2 were also part of the main class.  Some of the participants in those plans may be not be field workers, or may not have worked on public-works projects.[13]  So the Court cannot make a finding about how many participants in Plan 1 and Plan 2 were actually part of the main class, and therefore cannot make a finding about how many people are in the Plan 1 and Plan 2 Subclasses.  Failure to provide sufficient information to estimate the number of members of the Plan 1, Plan 1 Termination, and Plan 2 Subclasses prevents Plaintiffs from establishing numerosity at this time.  *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (reversing finding of numerosity where plaintiff failed to provide evidence of number of employees that met class definition); *Schwartz*, 183 F.R.D. at 680-682.

The same is true of the Driver Subclass.  That subclass contains "class members who were required to drive vehicles to and from jobsites."  Plaintiffs claim that the Driver Subclass has eighty members.  But the evidence they cite only establishes that eighty field employees have driven vehicles.  (Cvitan Decl., Ex. E at 164.)  It is unclear how many of those eighty drivers worked on public-works projects.

The Terminated Subclass also fails to satisfy the numerosity requirement for a similar reason.  Although Rossi Concrete admits that it terminated 327 field employees during the relevant time period, Plaintiffs have not cited any evidence showing how many of those 327 field employees worked on public works projects, which makes it impossible for the Court to determine the size of the Terminated Subclass.

Therefore, Plaintiffs have established numerosity only for one of the proposed subclasses, the Plan 3 Subclass.[14]  Because they have failed to establish that there are any

---

[13]  Indeed, Defendant Joe Rossi is a participant in Plans 1 and 2.

[14]  Plaintiffs point to *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 480 (E.D. Cal. 2006) for the proposition that "[t]he numerosity requirement is more readily met where a class contains employees suing their present employer."  But the mere fact that this action involves current employees does not excuse Plaintiffs from their burden of presenting evidence to show who would comprise membership of the other Subclasses.

members of the Plan 1 and 2 Subclasses, the Court denies certification for those Subclasses.  And because the Court, as set forth below, certifies only the Plan 3 Subclass, it need not certify an overarching main class at this time.  This is without prejudice to Plaintiffs seeking reconsideration based on evidence obtained at discovery that there are public works employees in the other proposed Subclasses.

### B.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "Commonality focuses on the relationship of common facts and legal issues among class members." *Dukes*, 603 F.3d at 599.  Rule 23(a)(2) is permissive, and "[a]ll questions of fact and law need not be common to satisfy the rule." *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "[O]ne significant issue common to the class may be sufficient to warrant certification," *id.*, and "[t]he existence of shared legal issues with divergent factual predicates is sufficient." *Dukes*, 603 F.3d at 599.

#### i.    Seventh and Eleventh Claims

Plaintiffs seek to certify two issues relevant to "the entire class" with respect to the Seventh and Eleventh Claims.  The first is whether Rossi Concrete paid its public-works field employees the correct base rate in wages.  And the second is whether Rossi Concrete correctly calculated the credit it took for its contributions to employee benefit plans.  Although Plaintiffs do not seek explicitly to certify these issues for the Plan 3 Subclass, these issues involve the rights of Plan 3 Subclass members as current and former employees of Rossi who have performed construction work on public works projects and are thus relevant to this Subclass. Accordingly, the Court will consider whether aspects of the Seventh and Eleventh Claims may be certified for the Plan 3 Subclass. *See American Finance System, Inc. v. Harlow*, 65 F.R.D. 94, 107 n. 14  (D. Md. 1974) ("Through the 'housekeeping' powers conferred on the district court by Rule 23(d), a class may be subdivided, certified as to certain issues, and, impliedly, combined with other proposed classes within the meaning of

13

08cv1442 BTM (CAB)

1    Rule 23(c)(4).").  The Court first addresses the base-rate issue.

2        Under California law, contractors on public-works projects must pay their employees

3    a prevailing wage.  Cal. Lab. Code § 1771.  The employer can use either an all-cash wage

4    or a combination of a cash wage and contributions to employee benefit plans to meet the

5    prevailing rate.  *See id.* at § 1773.1(a); *WSB Elec.*, 88 F.3d at 791.  When an employer uses

6    a combination of cash wages and benefits to meet the prevailing rate, Plaintiffs claim that

7    employers must still pay a minimum cash wage.  *See* Cal. Lab. Code § 1773.1(c);Cal. Code.

8    Regs. tit. 8, § 16200(a)(3)(I).  Plaintiffs call this minimum cash wage the base rate.

9        The prevailing wage, including the base rate, is set by the Department of Industrial

10   Relations ("DIR").  Cal. Lab. Code § 1770.  The DIR issues prevailing wages for each type

11   of worker.[15]  The base rate for some workers increases over time based on pre-determined

12   rate increases also set by the DIR.[16]  Plaintiffs claim that Rossi Concrete, as a matter of

13   policy, failed to apply these pre-determined increases to class members' cash wages, and

14   instead applied the increase to the pension contributions.  Whether or not California law

15   requires employers to pay a certain base rate in cash wages, and if so, whether Rossi

16   Concrete had a policy of paying wage increases to benefit plans instead of cash wages, are

17   issues common to the Plan 3 Subclass.[17]  This is because prevailing-wage laws apply to

18   each member of the Plan 3 Subclass, so the resolution of this common issue would affect

19   all of their rights.

20   _____

21       [15]  Historical prevailing-wage spreadsheets can be found online at
     www.dir.ca.gov/dlsr/main.htm (last visited June 29, 2010).

22       [16]  The DIR indicates a worker should get a pre-determined wage increase by using
23   a double asterisk next to the prevailing wage's expiration date.  Cal. Code Regs. tit. 8, §
     16204(b) (Prevailing wage determinations with double asterisks (**) after the expiration date
24   indicate that the basic hourly wage rate, overtime and holiday pay rates, and employer
     payments to be paid for work performed after this date have been predetermined. If work is
25   to extend past this date, the new rate must be paid and should be incorporated in contracts
     entered into now.")

26       [17]  There is some evidence that Rossi Concrete had such a class-wide policy.
27   Suzzette Stickney, Rossi Concrete's director of human resources, testified at her deposition
     that Rossi Concrete pays the pre-determined rate increases "all to pension." (Supp. Cvitan
28   Decl., Ex. A, 93:10–14.)  "We put it all to pension, and we leave it.  Because it's all—the
     money is all paid to the employee, just in some cases maybe not cash.  It's all paid to
     pension.  So we leave it as is."  *Id.* at 94:3–6.

Another common issue is whether Rossi Concrete took the right amount of credit for its employer contributions.  As the Court mentioned above, employers can use their contributions to employee benefit plans to help satisfy the prevailing wage.  *See* Cal. Lab. Code § 1773.1(a).  The question here is whether Rossi Concrete properly converted its employer contributions into an hourly rate.

Plaintiffs argue that Rossi Concrete had to annualize its employer benefits in determining the hourly rate of employer contributions.  There are at least two methods of counting employer contributions.  One is the annualization rule, which is the method Plaintiffs allege Rossi Concrete had to use.  Under that rule, Rossi Concrete had to add up all the employer contributions made during a year on both private and public-works projects, and divide the contributions by the total number of hours an employee worked on both private and public-works projects.  For example, an employee worked 500 hours in a year on public jobs and 500 hours on private ones.  And during his work on the public jobs, his employer contributed a total of $300 to his pension plan as part of his wages, and on the private jobs the employer contributed $200.  So in that year he worked a total of 1000 hours and the employer paid a total of $500 to his pension.  Under the annualization rule, the employer would divide the $500 by 1000 hours to get $0.50 per hour, and the employer could count that $0.50 of employer contributions toward the prevailing wage.

Rossi Concrete admits it did not annualize contributions, but argues that it did not have to.  According to Rossi Concrete, it had to add up the employer contributions it made for public-works projects only, and divide these contributions by the number of hours worked on public-works projects.  Using the same example, the employer would count only the 500 hours worked on public jobs and the $300 contributed to the employee's pension on public jobs; the hours worked and amounts contributed on private jobs would not be counted.  The employer would then divide the $300 by 500, which would result in an hourly contribution of $0.60.  So under this rule and using the same facts, an employer could take more credit for his employer contributions than it could if it used the annualization rule.  That is because without annualization an employer could contribute less to benefit plans while the employee

1    works on private jobs, and those lower contributions would have no effect on the credit it

2    could take for its contributions.  But under the annualization rule, if Rossi Concrete paid less

3    in benefits on private jobs, these lower payments would reduce the amount of credit Rossi

4    Concrete could take for its contributions.

5         So the annualization question raises at least two general issues.  The first is whether

6    annualization is required.  And the second, assuming annualization is required, is whether

7    Rossi Concrete properly annualized its employer contributions.  These are both issues which

8    are common to the members of the Plan 3 Subclass, who are, by definition, prevailing-wage

9    employees whose employer contributions may be subject to the annualization requirement.

10   Under the permissive standard of Rule 23(a)(2), *Dukes*, 603 F.3d at 599, these issues along

11   with the base-rate issue are sufficient to show that there are issues common to the class.

12        Defendants argue that the annualization issue requires too much individual inquiry.

13   But Rule 23(a)(2) is permissive, and the "existence of shared legal issues with divergent

14   factual predicates is sufficient" to satisfy it.  *Dukes*, 603 F.3d at 599.  Although there will be

15   individual inquiries necessary to assess any potential damages, at the very least there are

16   "shared legal issues with divergent factual predicates" and so the commonality requirement

17   is satisfied.  *Id.*

18

19              ii.    Third Claim

20        The Plan 3 Subclass comprises all participants in Plan 3 who were prevailing-wage

21   employees.  In the Third Claim, Plaintiffs allege that Rossi Concrete failed to contribute

22   enough to Plan 3 because it did not annualize its contributions and therefore may not have

23   paid enough into the ERISA plans.  The applicability of the annualization rule is central to

24   the Plan 3 Subclass and it is therefore an issue common to the class, in satisfaction of Rule

25   23(a)(2).

26

27        C.    Typicality

28        Rule 23(a)(3) requires that "the claims or defenses of the representative parties are

1  typical of the claims or defense of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's
2  permissive standards, representative claims are 'typical' if they are reasonably coextensive
3  with those of absent class members; they need not be substantially identical." *Dukes*, 603
4  F.3d at 613 (quoting *Hanlon*, 150 F.3d at 1020) (internal quotation omitted). "Some degree
5  of individuality is to be expected in all cases, but that specificity does not necessarily defeat
6  typicality." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

7       The four Moving Plaintiffs worked on public-works projects. (Decl. of Zacarias Millan
8  ¶ 7; Decl. of Reynaldo Galvan ¶ 8; Decl. of Juan Martinez ¶ 8; Decl. of Andres Millan ¶ 7.)
9  They also all participated in Plan 3, which was the Rossi Concrete, Inc., 401K PSP. (Decl.
10 of Zacarias Millan ¶ 5; Decl. of Reynaldo Galvan ¶ 5; Decl. of Juan Martinez ¶ 5; Decl. of
11 Andres Millan ¶ 5.) They are therefore members of the Plan 3 Subclass, and there is no
12 evidence before the Court showing that their claims are not typical of the classes they seek
13 to represent.

14      Defendants argue that because the named plaintiffs raised un-pled retaliation claims
15 in their depositions, the named plaintiffs' claims are not typical of the classes they seek to
16 represent. But the proper focus is on the claims pled in the Complaint, and the named
17 plaintiffs have typical claims.

18      Defendants also argue several of the named plaintiffs "admitted at deposition that
19 they suffered no physical injury or lost any money or property as a result of conduct alleged
20 in the claims plaintiffs seek to certify." (Opp. at 17.) They argue that because they have not
21 suffered injury, they cannot represent the class. *O'Shea v. Littleton*, 414 U.S. 488, 494
22 (1974) (named plaintiffs must have sustained injury). Defendants, however, overstate the
23 deposition testimony. For example, in response to questions like, "[D]uring that time
24 between 2002 and 2007, did you ever lose any money or property because of something
25 Rossi Concrete did?" named plaintiff Andres Millan referred to Rossi Concrete's failure to
26 reimburse him for a work-related traffic accident and for some on-the-job lunches, but
27 nothing else. (A. Millan Dep. 39:19–41:23.) This hardly qualifies as an admission, as the
28 question is ambiguous and did not specifically refer to the prevailing-wage issues,

1   annualization, or any other issue alleged in the Complaint.  Defendants try to make hay out

2   of the fact that most of the named plaintiffs did not complain to Rossi Concrete that they

3   were not being paid enough, but the Court would not expect the named plaintiffs to be aware

4   of errors in computing increases in their base rate or the annualization requirement. These

5   are errors which are not apparent on the face of their pay stubs and are somewhat technical.

6   The deposition testimony of the other named plaintiffs is similar and, for the same reasons,

7   do not qualify as admissions.

8

9         D.    <u>Adequacy</u>

10       Rule 23(a)(4) permits certification of a class only if the "representative parties will fairly

11   and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This factor

12   requires "(1) that the proposed representative Plaintiffs do not have conflicts of interest with

13   the proposed class, and (2) that Plaintiffs are represented by qualified and competent

14   counsel." *Dukes*, 603 F.3d at 614 (citing *Hanlon*, 150 F.3d at 1020).  The conflicts must be

15   serious and irreconcilable in order to defeat certification. *Breeden v. Benchmark Lending*

16   *Group. Inc.*, 229 F.R.D. 623, 629 (N.D. Cal. 2005) (citing *Sosna v. Iowa*, 419 U.S. 393, 403

17   (1975).  Only one of the named plaintiffs must be an adequate representative. *Local Joint*

18   *Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152,

19   1162 n.2 (9th Cir. 2001).

20       The named plaintiffs are all members of the classes they want to represent, and they

21   have no apparent conflicts with the other class members.  Defendants, however, argue that

22   this class action could preclude absent class members from pursuing claims individually.

23   Preclusion of individual claims is a feature inherent in virtually all class actions, and any

24   individual class members who want to pursue their own claims will have the chance to opt

25   out.  They also argue "Plaintiffs are ignorant of their claims and the allegations in their

26   complaint."  (James Rossi Opp. at 12.)  But a class representative does not have to know

27   the legal basis of their claims or even understand them. *Cf. Las Vegas Sands, Inc.*, 244

28   F.3d at 1162 (adequacy focuses on "absence of antagonism, a sharing of interests between

18

1   representatives and absentees, and the unlikelihood that the suit is collusive"). The record

2   shows that the representatives understand and are willing to fulfill their duties, (Galvan Decl.

3   ¶ 11, Z. Millan Decl. ¶ 10, A. Millan Decl. ¶ 10, Martinez Decl. ¶ 11), and Rule 23(a)(4) does

4   not require more.  *See Las Vegas Sands, Inc.*, 244 F.3d at 1162 ("The record indicates

5   clearly that he understands his duties and is currently willing and able to perform them. The

6   Rule does not require more.").

7           Regarding the requirement that Plaintiffs are represented by qualified and competent

8   counsel, Defendants do not oppose this point, and the Court finds that Plaintiffs' counsel are

9   qualified and will represent Plaintiffs effectively.

10

11  **3.      Rule 23(b)**

12          A plaintiff must satisfy only one of three criteria under Rule 23(b) in order to certify a

13  class.  Plaintiffs seek certification for the Third Claim under Rule 23(b)(1) and certification

14  for the Seventh and Eleventh Claims under Rule 23(b)(3).

15

16          A.      Rule 23(b)(1)—The Third Claim

17          Certification under Rule 23(b)(1)(B) is appropriate if "(1) prosecuting separate actions

18  by or against individual class members would create a risk of: . . . (B) adjudications with

19  respect to individual members of the class which would as a practical matter be dispositive

20  of the interests of the other members not parties to the adjudications or substantially impair

21  or impede their ability to protect their interests."  A classic example of a Rule 23(b)(1)(B)

22  action is one which charges "a breach of trust by an indenture trustee or other fiduciary

23  similarly affecting the members of a large class of beneficiaries, requiring an accounting or

24  similar procedure to restore the subject of the trust."  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815,

25  834 (1999).

26          Plaintiffs seek certification under this rule for the Third Claim, which asserts a

27  fiduciary breach under ERISA § 502(a)(2).  Under that provision, any monetary relief would

28  go to the plan as a whole, not to an individual plaintiff.  *See Mass. Mut. Life Ins. Co. v.*

*Russell*, 473 U.S. 134, 141–44 (1985).  "In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held."  *In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 604 (3d Cir. 2009) (listing cases).  The Court therefore finds that the Third Claim satisfies Rule 23(b)(1)(B).  *See In re Syncor ERISA Litigation*, 227 F.R.D. 338, 346–47 (C.D. Cal. 2005) (certifying class asserting ERISA claims under Rule 23(b)(1)(B)); *Hochstadt v. Boston Scientific Corp.*, — F. Supp. 2d —, 2010 WL 1704003, at *12, n.12 (D. Mass. Apr. 27, 2010) (same).

Defendants argue Moving Plaintiffs lack standing to pursue the ERISA claims because they have not shown they were plan participants at the time the lawsuit was filed and because some class representatives have cashed out of their plans.  But the evidence shows that each of the class representatives were participants in Plan 3.  (Galvan Decl. ¶ 5, Z. Millan Decl. ¶ 5, A. Millan Decl. ¶ 5, Martinez Decl. ¶ 5.)  Moreover, "employees who have cashed out their individual accounts but allege they are entitled to additional benefits as a result of a breach of fiduciary duty have standing as 'participants' under ERISA." *Vaughn Bay Environmental Mgmt., Inc.*, 567 F.3d 1021, 1028 (9th Cir. 2009).

Defendants also argue that because Plaintiffs seek primarily monetary relief for their ERISA claim, the Third Claim should not be certified.  But they cite no case law in support of their argument, and another court has rejected this argument on nearly identical facts. *See re Syncor ERISA Litigation*, 227 F.R.D. at 346.  The court in *Syncor* "could find no other case which barred certification under Rule 23(b)(1)(B) just because the plaintiffs seek monetary relief," and neither can this Court.  *Id.*

The Court certifies the Third Claim under Rule 23(b)(1)(B).


B.      Rule 23(b)(3)—The Seventh and Eleventh Claims

Plaintiffs seek certification for the Seventh and Eleventh Claims under Rule 23(b)(3). This rule provides that a class action may be certified if

> (3) the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that

a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Las Vegas Sands, Inc.*, 244 F.3d at 1162.  "[T]he Court must identify the issues involved in the case, and determine which are subject to common proof and which are subject to individualized proof."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 310 (N.D. Cal. 2010).

Moving Plaintiffs seek to certify two causes of action relevant to the Plan 3 Subclass: the seventh cause of action for prevailing wages,[18] and the eleventh cause of action under California's UCL.  As the Court explained above, the prevailing-wage claim involves resolving whether Rossi Concrete had to make periodic increases to the base rate of cash wages, which is a legal issue that can be determined using common proof.  The other base-rate issue is, assuming Rossi Concrete had to make increases to the base rate, whether those increases should be allocated to cash or could instead go to increases in pension payments.  This is also a legal question.  Determining what Rossi Concrete's actual practice was regarding base-rate wage increases can also be resolved using common proof by analyzing

---

[18]   The seventh cause of action also asserts an overtime claim, but Plaintiffs only sought certification of the overtime claim for the Driver Subclass, which, as explained above, does not meet the numerosity requirement.   The Court therefore only includes the prevailing-wage claim as part of the certification analysis.

1  employer documents and deposing their witnesses.[19]   Assuming Rossi Concrete had to
2  make increases to the base rate cash wages and did not, then the only remaining issue
3  would likely be calculating damages.

4      The prevailing-wage claim involves another issue: whether Rossi Concrete was
5  required to annualize its employer contributions.  This is primarily a legal issue that the Court
6  can resolve by reviewing the applicable statutes, regulations, and case law.  If the Court
7  decides that Rossi Concrete should have annualized, then the only remaining task would be
8  calculating damages.  Although calculating damages would involve individual inquiry into the
9  wages of each class member, this would likely involve only simple arithmetic and would not
10  be a reason to deny class certification.  *See Yokoyama v. Midland Nat'l Life Ins. Co.*, 594
11  F.3d 1087, 1094 (9th Cir. 2010) ("[T]he amount of damages is invariably an individual
12  question and does not defeat class action treatment.").

13      Defendants argue against a finding of predominance in several ways.  The first is that
14  individual questions predominate regarding whether each class member is a "worker[]
15  employed on public works," which is essentially the definition of a prevailing-wage employee.
16  *See* Cal. Lab. Code §§ 1771, 1772.  But this is an issue regarding which class members are
17  actually in the class, which is an inherent part of any class action.  Moreover, Plaintiffs are
18  not challenging Rossi Concrete's classifications regarding who is a prevailing-wage
19  employee and who is not.  *See* Reply at 18.  Having to determine who is in the class and
20  who is not will not defeat class certification.  *See Durham v. Continental Cent. Credit*, No.
21  07cv1763, 2010 WL 2776088, at *3 (S.D. Cal. July 14, 2010) (rejecting similar argument
22  regarding predominance because it "relate[d] to who qualifies as a class member, not
23  whether issues common to the class predominate").

24      Their second argument is that different standards apply to different public-works

25

---

26     [19]   The Court has already noted that there is some evidence that Rossi Concrete had
a class-wide policy of allocating base-rate wage increases to pension payments. Suzette
27  Stickney, Rossi Concrete's director of human resources, testified at her deposition that Rossi
Concrete pays the pre-determined rate increases "all to pension." (Supp. Cvitan Decl., Ex.
28  A, 93:10–14.)  "We put it all to pension, and we leave it. Because it's all—the money is all
paid to the employee, just in some cases maybe not cash. It's all paid to pension. So we
leave it as is."  *Id.* at 94:3–6.

08cv1442 BTM (CAB)

projects, and so the rules regarding determining the prevailing wage, and deciding whether it even applies, will differ.  The Court finds that this issue, too, goes to either the extent of damages or whether a person is actually a class member.  And, as discussed above, calculating damages or having to decide who is a class member will not defeat certification.

Defendants next argue that a class member is only entitled to the prevailing wage based on the classification applicable to work that he actually performs.  So to determine each class members' prevailing wage, a plaintiff would have to prove exactly what work he actually did and then match that to a prevailing-wage classification.  Although Defendants are right that this would involve an individual inquiry, Plaintiffs do not challenge Rossi Concrete's classifications and do not seek certification on the issue of which class members fall into which classifications.

Defendants' last argument against predominance is that there are individual questions about the number of hours worked, wages earned, and compensation paid.  These are all damages issues and will not defeat certification.  *See Yokoyama*, 594 F.3d at 1094.

For these reasons, the Court finds that common issues predominate.  The Court must now decide whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."  *Hanlon*, 150 F.3d at 1023.  Rule 23(b)(3) sets forth factors to guide the Court's analysis: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).

The Court finds that a class action would be superior.  Although Plaintiffs could pursue some of their claims individually through the FLSA or by using state procedures, "courts have not hesitated to certify class actions for wage and hour claims simply because California law provides for administrative relief."  *Wang v. Chinese Daily News, Inc.*, 231

F.R.D. 602, 614 (C.D. Cal. 2005) *abrogated on other grounds by Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009); *see also Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 490–91 (E.D. Cal. 2006) (class action superior for wage-and-hour claims against employer); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y.2001) (holding that certification of plaintiffs' state claims was consistent with collective action under FLSA § 16(b) and that class treatment was superior). Because of the common issues the Court has identified above, adjudicating these claims as a class action will be more efficient for the parties and for the Court.

Moreover, the four factors listed in Rule 23(b)(3) weigh in favor of certification. There is no evidence that the class members have a strong interest in individually prosecuting these claims or that they are already litigating these claims in other forums. It would be efficient to concentrate the litigation of the claims in this Court, and the parties have not shown that there would be significant difficulties in managing a class action.

Defendants barely address the superiority prong explicitly, and only claim in a conclusory way that "Plaintiffs have not shown any support for the ERISA claims by any purported class members" and they have failed to demonstrate superiority. Joseph Rossi Opp. 12. Although Defendants focus on the ERISA claims in their argument against a finding of superiority, the Court has certified the ERISA claims as a Rule 23(b)(1) class, which does not require showing superiority. *Compare* Fed. R. Civ. P. 23(b)(1) *with* Fed. R. Civ. P. 23(b)(3). Defendants' arguments against superiority are therefore unpersuasive.

For these reasons, the Court finds that Plaintiffs have satisfied the superiority requirement with respect to the Seventh and Eleventh Claims.

## IV. CONCLUSION

The Court **GRANTS in part** and **DENIES in part** Moving Plaintiffs' motion for class certification. The Court denies certification as to the Plan 1, Plan 1 Termination, Plan 2, Termination and Driver Subclasses for failure to present sufficient evidence of numerosity. Because the Court certifies only the Plan 3 Subclass, it need not certify an overarching main

class at this time. The Court certifies the Plan 3 Subclass as follows:

The Plan 3 Subclass includes all current and former employees of Rossi Concrete who within four years of filing the Complaint have performed construction work on public works for Rossi Concrete and have participated in the employee benefit plan defined as Plan 3 in the Complaint.

The Moving Plaintiffs—Reynaldo Galvan, Juan Martinez, Andres Millan, and Zacarias Millan—will serve as representative plaintiffs of this class.

The class issues relevant to the Plan 3 Subclass are (1) the third cause of action for ERISA violations and (2) the following issues within the seventh and eleventh causes of action: (i) whether Rossi Concrete correctly calculated the credit allowed for employer payments as defined in California Labor Code § 1773.1; and (ii) whether the correct base rate for each prevailing wage classification was paid to class members on their paychecks.

Class counsel will be the law firm of Reich, Adell & Cvitan.

The parties shall confer about appropriate notice to the class, and shall move, jointly if possible, the magistrate judge for an order approving the form of notice.

**IT IS SO ORDERED.**

DATED:  September 22, 2010

Honorable Barry Ted Moskowitz
United States District Judge

25

08cv1442 BTM (CAB)